UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| ANDREW SCOTT CONNING, | * * * | |
| Plaintiff, | * * | |
| v. | * * | Civil Action No. 18-cv-12336-ADB |
| JACK HALPERN and CJKI DICTIONARY INSTITUTE, INC., | * * * | |
| Defendants. | * * | |

**MEMORANDUM AND ORDER ON DEFENDANTS' MOTION FOR A PROTECTIVE ORDER AND PLAINTIFF'S EMERGENCY MOTION TO COMPEL**

BURROUGHS, D.J.

On September 16, 2020, Defendants Jack Halpern and CJKI Dictionary Institute, Inc. ("CJKI," and, together with Halpern, "Defendants") filed a motion for a protective order.  [ECF No. 69].  Plaintiff Andrew Scott Conning opposed Defendants' motion and moved to compel. [ECF No. 70].  On September 25, 2020, via a short electronic order entered on the docket, [ECF No. 71], the Court <u>DENIED</u> Defendants' motion, [ECF No. 69], and <u>GRANTED</u> Conning's motion, [ECF No. 70].  The reasons for the Court's decision are set forth below.

I.   **BACKGROUND**

A.   **Factual Background**

Conning entered into a consulting agreement with CJKI in 2014, pursuant to which he agreed to edit CJKI's Chinese Learner's Dictionary in exchange for cash and other consideration. [ECF No. 70 at 2].  After CJKI violated the agreement, Conning commenced an arbitration against CJKI before the Japan Commercial Arbitration Association (the "JCAA").  [<u>Id.</u>]  He

obtained a final award from the JCAA in February 2017, which directed CJKI to make various payments to Conning.  [Id. at 3].

Although Defendants made three payments in partial satisfaction of the JCAA's award, they stopped short of full satisfaction.  [ECF No. 70 at 3].  Instead, Conning alleges, Defendants engaged in a pattern of coercion and pressure to attempt to persuade him to abandon his claim, including threatening to interfere with Conning's relationship with his own publisher and pressuring Conning into accepting partial payment of the arbitral award based on their purported inability to pay the full amount.  [Id. at 3–4].

Conning filed this action, seeking the unpaid portion of the arbitral award, as well as damages for defamation, intentional interference with Conning's contractual relationship with his publisher, and unfair business practices under Massachusetts General Laws Chapter 93A.  See generally [ECF No. 1-2 at 14–37].  On February 4, 2020, the Court granted Conning's motion for judgment on the pleadings with respect to Conning's claim relating to the arbitral award, [ECF No. 44], and Defendants paid the remaining balance on February 12, 2020, [ECF No. 53 at 3].  The defamation, intentional interference, and Chapter 93A counts remain.

### B.      Discovery to Date

Discovery in this case has been slow-moving and highly contentious.  Although discovery was originally slated to conclude in February 2020, [ECF No. 33], the parties requested multiple extensions, [ECF Nos. 45, 49, 56], which the Court granted, [ECF Nos. 47, 50, 58].  The current deadline is September 30, 2020 and, when it set the current deadline, the Court clearly stated that the deadline would not be extended further.  [ECF No. 65].

Notwithstanding an additional seven months of discovery, the parties still have been unable to resolve their discovery disputes without judicial intervention.  In May 2020, Conning

moved to compel Defendants to provide more complete answers to interrogatories and produce documents responsive to certain of his requests for production.  [ECF Nos. 52, 54].  In July 2020, the Court granted Conning's motion and ordered Defendants to comply with Conning's discovery requests by August 3, 2020.  [ECF No. 63].  Defendants, however, failed to do so.  See [ECF No. 64].  The Court extended the deadline to respond by two weeks, but admonished Defendants that "this extension and the motion practice around it would not have been necessary had the Defendants done a competent job of discovery to begin with."  [ECF No. 65].  According to Conning, Defendants have still not obeyed the Court's Order.  [ECF No. 70 at 6–7].

### C.     The Instant Dispute

On September 15, 2020, Halpern sat for a deposition (the "Deposition") in both his personal capacity and as CJKI's corporate designee pursuant to Federal Rule of Civil Procedure 30(b)(6).  See [ECF No. 70-1 at 27–44].  In the 30(b)(6) deposition notice that he served on Defendants, which was substantively the same as the original notice he served in January 2020 but with a new deposition date, Conning listed eleven topics including, but not limited to, "[t]he assets of [CJKI] . . . from January 1, 2012 to the present," "CJKI's revenue and expenses since January 1, 2012," and "revenue derived from the sale of software applications within the last 5 years."  [Id. at 14–15].  Shortly after the Deposition began, Conning's counsel asked Halpern, "[i]n the most recent full year, how much revenue did your company get from licensing those databases?"  [Id. at 39].  Defense counsel lodged a relevance objection, stated that he viewed the question as harassment, and instructed Halpern not to answer.  [Id.].  Conning's counsel threatened to cut the Deposition short if Halpern did not answer his question and other similar questions regarding Defendants' finances.  [Id. at 40].  Defense counsel offered to table debate

regarding the line of questioning and continue the Deposition.  [Id. at 40–42].  Conning's counsel instead elected to end the Deposition.  [Id. at 42].

The next day, Defendants moved for a protective order, asking the Court to (1) prohibit Conning from seeking discovery into Defendants' finances, (2) limit questioning at the deposition to only those topics relevant to a claim or defense in the case, and (3) limit Halpern's deposition to five hours.  [ECF No. 69].  Defendants argue that information about their financial situation is irrelevant and therefore not subject to discovery and further, that the information is "highly sensitive and competitive."  [Id. at 3].  They also maintain that because Defendants had previously objected to written discovery requests from Conning regarding similar information and Conning had not challenged their objections, Conning has waived his right to obtain discovery on those topics.  [Id. at 3–4].  Finally, they contend that Conning's counsel's conduct at the deposition "evidences bad faith and an intent to harass."  [Id. at 4].

On September 22, 2020, Conning opposed Defendants' motion and moved to compel Halpern's deposition testimony.  [ECF No. 70].  Specifically, Conning seeks an order (1) denying Defendants' motion; (2) directing Halpern to sit for depositions on September 29, 2020, and, if necessary, September 30, 2020, and answer all questions on the topics that were included in his deposition notice; (3) directing Defendants to reimburse Conning for costs associated with the aborted September 15, 2020 deposition; and (4) awarding Conning reasonable attorneys' fees in connection with the instant motion practice.  [Id.].  In support of his request, Conning argues that relevance is not a proper ground for refusing to answer a question at a deposition and that even if it were, Defendants' finances are relevant; and that Defendants forfeited their right to object because they have known the topics on which Conning would seek 30(b)(6) testimony since January 2020 but failed to object until the Deposition was underway.

[Id. at 9–13].  In response to Defendants' claim that their finances are "highly sensitive and competitive," Conning notes that there is a protective order in this case, [ECF No. 67], pursuant to which Defendants may designate deposition testimony as confidential, [ECF No. 70 at 13].

## II.   LEGAL STANDARD

In the absence of a court order, pursuant to Federal Rule of Civil Procedure 26(b),

> [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b).  As a "general matter, relevancy must be broadly construed at the discovery stage such that information is discoverable if there is any possibility that it might be relevant to the subject matter of the action."  Viscito v. Nat'l Planning Corp., No. 18-cv-30132, 2019 WL 5318228, *1 (D. Mass. Oct. 21, 2019) (citations and internal quotation marks omitted); see also Atchison Casting Corp. v. Marsh, Inc., 216 F.R.D. 225, 227 (D. Mass. 2003) ("The broad scope of the discovery rules reflects a policy that '[m]utual knowledge of all the relevant facts gathered by both parties is essential to proper litigation.'" (quoting Hickman v. Taylor, 329 U.S. 495, 507 (1947)); cf. Fed. R. Evid. 401 (stating that evidence is relevant if it "has any tendency to make a fact more or less probable than it would be without the evidence; and [] the fact is of consequence in determining the action").

During a deposition, a "person may instruct a deponent not to answer only when necessary to preserve privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)."  Fed. R. Civ. P. 30(c)(2).  Lack of relevance is not referenced in Rule 30 as a sufficient justification for instructing a deponent not to answer a question and courts have generally held that it is not.  See, e.g., Armstrong ex rel. United States v. Andover Subacute

<u>& Rehab Ctr. Servs. One, Inc.</u>, No. 12-cv-03319, 2020 WL 57947, at \*2 (D.N.J. Jan. 6, 2020)

("A relevance objection is not itself proper grounds for instructing a witness not to answer

questions in a deposition."); <u>Law Firm of Omar T. Mohammedi, LLC v. Comput. Assisted</u>

<u>Practice Elec. Mgmt. Sols.</u>, No. 17-cv-04567, 2018 WL 5016605, at \*2 (S.D.N.Y. Oct. 16, 2018)

(collecting cases).

Rule 30(d)(3)(A), in turn, provides that:

> At any time during a deposition, the deponent or a party may move to terminate or limit it on the ground that it is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party. The motion may be filed in the court where the action is pending or the deposition is being taken. If the objecting deponent or party so demands, the deposition must be suspended for the time necessary to obtain an order.

Fed. R. Civ. P. 30(d)(3)(A).

Rule 37 permits parties to move for an order to compel if a deponent fails to answer a

question. Fed. R. Civ. P. 37(a)(3)(B)(i). If the court grants the motion to compel:

> the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. But the court must not order this payment if:
>
> > (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;
> >
> > (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or
> >
> > (iii) other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(a)(5)(A). Similarly, if the court denies the motion, the court must:

> after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees. But the court must not order this payment if the motion was substantially justified or other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(a)(5)(B).

## III.   DISCUSSION

### A.   Waiver

Defendants argue that Conning did not contest their objections to written discovery requests regarding their finances and is therefore estopped from asking questions on the same topic at a deposition.  [ECF No. 69 at 3–4].  Conversely, Conning asserts that because Defendants did not object to the 30(b)(6) topics related to their finances when the deposition was first noticed, see [ECF No. 70-1 at 12–15], they are estopped from objecting on relevance grounds now.  [ECF No. 70 at 12–13].

Defendants' argument regarding waiver misses the mark.  A failure to object and a failure to contest an adversary's objection are not equivalent.  A failure to object to an objection does not necessarily act as a waiver.

Conning's argument regarding waiver is persuasive.  Although the Federal Rules of Civil Procedure allow parties to withhold responses to interrogatories, requests for production, and requests for admission until an order compelling disclosure is issued once there has been a timely objection, see Fed. R. Civ. P. 33, 34, 36, the Rules provide no such mechanism in connection with depositions.[1]  Rather, if the parties cannot reach agreement regarding the scope of the deposition, it is incumbent upon the recipient of the deposition notice to seek a protective order.  Simply put, "a party who for one reason or another does not wish to comply with a notice of deposition must seek a protective order."  New England Carpenters Health Benefits Fund v. First DataBank, Inc., 242 F.R.D. 164, 166 (D. Mass. 2007).  At the very least, Defendants should have

---

[1] Rule 32(d)(1) states that "[a]n objection to an error or irregularity in a deposition notice is waived unless promptly served in writing on the party giving the notice."  Fed. R. Civ. P. 32(d)(1).  However, that rule speaks to "errors" and "irregularities" not substantive objections, like the ones at issue here.

made objections to the scope of the 30(b)(6) deposition in writing and/or during a meet-and-confer prior to the deposition.  See Neponset Landing Corp. v. Nw. Mut. Life Ins. Co., 279 F.R.D. 59, 62 (D. Mass. 2011).  Here, Defendants did neither.  Instead, they sought a protective order only after the Deposition was underway despite knowing the topics that Conning would cover with the witness since January 2020.  Thus, Defendants waived their relevance objections and, in any event, should have stated their objections on the record and allowed the deposition to continue.

### B.    Relevance and Proportionality

Even though the Court has concluded that Defendants have waived their relevance objection, it will nevertheless consider the merits of the objection in the interests of a complete record.

Defendants have not contended that information regarding their finances is privileged. Therefore, if Defendants' financial information "is relevant to any party's claim or defense," Conning may obtain discovery on that topic so long as it is proportional to the needs of the case. Fed. R. Civ. P. 26(b).  As discussed above, the Court granted Conning's motion for judgment on the pleadings with respect to his request for enforcement of the arbitral award.  [ECF No. 44]. As a result, three claims remain: his claim for defamation; his claim for tortious interference with a business relationship; and his claim for violation of Chapter 93A.  [Id.].  Conning asserts that Defendants' finances are relevant to the remaining claims for two reasons.  [ECF No. 70 at 11–12].  First, because they relate to whether Halpern and CJKI are alter-egos, which would, in Conning's view, affect his ability to pierce the corporate veil and look to Halpern to satisfy a

judgment against CJKI and second, because they could demonstrate a motive for Defendants' alleged tortious interference with his publisher.  [Id.].

As to Conning's first argument, Conning alleges that Halpern is the CEO and sole owner of CJKI, that Halpern and CJKI commingled their funds, and that Halpern's actions on behalf of CJKI are indistinguishable from his personal actions.  See [ECF No. 1-2 ¶¶ 2, 5, 6].  Defendants admit the first allegation and deny the others.  See [ECF No. 28 at 1].  Halpern is both an officer and a shareholder of CJKI and is potentially liable for CJKI's torts in connection with each role. "A corporate officer is personally liable for a tort committed by the corporation that employs him, if he personally participated in the tort by, for example, directing, controlling, approving, or ratifying the act that injured the aggrieved party."  Townsends, Inc. v. Beaupre, 716 N.E.2d 160, 751 (Mass. App. Ct. 1999).  Similarly, a corporation's shareholders "may be held liable for the acts of the company 'where they control the operation of the corporation and run it for their personal benefit, and where justice requires that the separate existence of the corporation be ignored.'"  Pepsi-Cola Metro. Bottling Co. v. Checkers, Inc., 754 F.2d 10, 16 (1st Cir. 1985). Commingling of personal and corporate funds is one of the factors that courts consider when deciding whether to hold shareholders personally liable for corporate acts.  Id.  Although the commingling of funds might not be relevant to Conning's attempt to hold Halpern liable for CJKI's torts because of his role as CEO (assuming Conning demonstrates that Halpern "personally participated in the tort"), it is plainly relevant to Conning's attempt to hold Halpern liable for CJKI's torts because of his role as sole shareholder.  Defendants dispute that the funds were commingled and will undoubtedly object to holding Halpern personally liable for CJKI's

misdeeds if Conning should prevail on his claims.  For that reason, Defendants' finances are relevant to claims or defenses in this action.

As to Conning's second argument, under Massachusetts law,

[t]here are four elements to a claim for intentional interference with contract or advantageous business relations: (1) the plaintiff had a contract or advantageous business relationship with a third party, (2) the defendant knowingly induced the third party to break the contract or to forego the business relations, (3) the defendant's interference was improper in motive or means, and (4) the plaintiff was harmed by the interference.

Kelleher v. Lowell Gen. Hosp., No. 19-P-00392, 2020 WL 3980773, at *4 (Mass. App. Ct. July 15, 2020) (citing Phys-Ed Corp. v. Klein, 947 N.E.2d 520, 536 (Mass. 2011)).  Here, Defendants' finances are relevant to element (3) of Conning's intentional interference claim. Under Conning's theory of the case, because Defendants were in dire financial straits, they sought to interfere with Conning's business relationship to coerce him into accepting less than full satisfaction of his arbitral award.  [ECF No. 70 at 3].  Regardless of whether Conning's theory is true, Defendants' financial position is relevant to Defendants' motive for interfering with Conning's business relationship with his publisher.

Because the Court has concluded that the information sought by Conning is relevant, it must now decide whether allowing Conning to obtain the information via deposition testimony is "proportional to the needs of the case."  Fed. R. Civ. P. 26(b).  In so doing, the Court must consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Id.  Because the information regarding Defendants' finances is relevant and Defendants will likely incur only minimal burden and expense in providing it, the Court concludes that it is proportional to the needs of the case.  Whereas producing documents

often necessitates time-consuming and costly review by outside counsel, appearing for a deposition, especially one being conducted via videoconference, is relatively painless and inexpensive.[2]  This is particularly true where Halpern will be sitting for one or more depositions in any event.[3]  Answering questions regarding Defendants' finances will be no more burdensome to Halpern than answering questions about any other topic.  Moreover, to the extent Defendants' view their financial information as "highly sensitive and competitive," [ECF No. 69 at 3], they can designate the relevant excerpts of the deposition transcript as confidential pursuant to the parties' protective order, [ECF No. 67].

Accordingly, because the information sought by Conning is relevant and proportional to the needs of the case, he is entitled to conduct discovery, including through a deposition, and his motion to compel is granted.  Because Defendants' motion for a protective order is essentially an opposition to Conning's motion to compel, it is denied.[4]

---

[2] The party taking the deposition traditionally pays for the stenographer and, if applicable, videographer.

[3] Presumably, Halpern has already prepared for his deposition with his attorney.  To the extent additional preparation regarding Defendants' finances is required, it should be minimal, as Defendants have produced no documents regarding their finances that Halpern will need to review.

[4] The Court finds Defendants' argument that Conning's counsel acted in "bad faith" and with "an intent to harass," see [ECF No. 69 at 4], meritless.  The Court has reviewed the deposition transcript, [ECF No. 70-1 at 27–44], and sees no definitive evidence of bad faith or harassment.  Conning's counsel did not berate, badger, or otherwise annoy Halpern.  He was not unduly abrasive or aggressive.  In short, Conning's counsel did not engage in the type of misconduct that would warrant instructing a witness not to answer a question pursuant to Rule 30.  See Fed. R. Civ. P. 30(c)(2), (d)(3)(A).

### C.      Attorneys' Fees and Costs

Having granted Conning's motion to compel, after providing them with an opportunity to be heard, the Court must require Defendants (or Defendants' counsel) to pay Conning's reasonable expenses incurred in making the motion, including attorneys' fees, unless:

> (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;
>
> (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or
>
> (iii) other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(a)(5)(A).

Because Defendants have not yet been heard on this issue, the Court will withhold judgment as to fees and costs.[5]  The Court does, however, expect both parties to conclude discovery in this matter quickly and with civility and will not hesitate to award fees and costs for motion practice that results from unwarranted delay or behavior seemingly designed to harass each other rather than to move this litigation forward.

## IV.      CONCLUSION

Accordingly, as noted in the Court's September 25, 2020 electronic order, [ECF No. 71], Defendants' motion for a protective order, [ECF No. 69], is <u>DENIED</u> and Conning's motion to compel, [ECF No. 70], is <u>GRANTED</u>.  Defendant Halpern shall appear, in both his individual capacity and as Defendant CJKI's Rule 30(b)(6) designee, for a virtual deposition on September 29, 2020 at 5:00 PM for a maximum of five hours, and, if necessary, on September 30, 2020 at

---

[5] Should Conning elect to pursue fees and costs, by October 2, 2020, he should submit to the Court an itemized statement of his expenses, including attorneys' fees, incurred in connection with this motion.  Defendants shall show cause within 10 days of the filing of such a statement as to why the Court should not order them to pay Conning's reasonable fees and expenses.

5:00 PM for a maximum of five hours or on other mutually agreeable dates and times on or before September 30.  Defendant Halpern is directed to answer all questions relating to and/or concerning each of the topics included in Schedule A of the deposition notice served upon him, [ECF No. 70-1 at 4–5].

        **SO ORDERED.**

September 29, 2020                                                        /s/ Allison D. Burroughs
                                                                   ALLISON D. BURROUGHS
                                                                  U.S. DISTRICT JUDGE