UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ANDREW SCOTT CONNING, | * * * |
| Plaintiff, | * * |
| v. | * * |
| JACK HALPERN and CJKI DICTIONARY INSTITUTE, INC., | * * * |
| Defendants. | * * * |

Civil Action No. 18-cv-12336-ADB

## MEMORANDUM AND ORDER

BURROUGHS, D.J.

Plaintiff Andrew Scott Conning ("Plaintiff") brings this action against Defendants Jack Halpern and CJKI Dictionary Institute, Inc. ("CJKI," and, together with Halpern, "Defendants"), asserting multiple claims arising out of their contentious business relationship. Plaintiff's basic allegation is that after their business relationship soured, Plaintiff prevailed in an arbitration, but Defendants refused to pay the entire arbitral award and instead engaged in coercive, defamatory, and unfair and deceptive conduct to damage Plaintiff's business relationship with his publisher and to discourage him from pursuing the full amount of the arbitral award. Currently before the Court are Defendants' motion for summary judgment on all remaining claims, [ECF No. 88], and Plaintiff's motion for sanctions and relief pursuant to Federal Rules of Civil Procedure 37(b)(2)(A) and 56(d), [ECF No. 91], which Defendants have moved to strike, [ECF No. 93]. Additionally, Plaintiff has moved to strike certain aspects of Defendants' summary judgment reply brief. [ECF No. 105]. For the reasons set forth below, all four motions are DENIED.

I.      BACKGROUND

    A.      Factual Background

Except as otherwise noted, the following facts are undisputed.[1]

CJKI, which Halpern owns and controls, is a world leader in Chinese, Japanese, and Korean lexicography.  [ECF No. 90 ¶¶ 1, 3].  Among CJKI's intellectual property is the Kodansha Kanji Learner's Dictionary: Revised and Expanded (the "KKLD").  [Id. ¶ 2].[2]  In 1999, Kodansha International Ltd. ("KIL") published the original version of the KKLD, and in 2012 and 2013, Kodansha USA, Inc. ("KUI"), a KIL affiliate, published the current version.  [Id. ¶ 3].

In December 2007, Defendants gave KIL authorization to use certain proprietary material (the "Licensed Data") in a to-be-published book.  [ECF No. 90 ¶ 10].  Plaintiff subsequently wrote that book, The Kodansha Kanji Learner's Course (the "KKLC"), and KUI published it in 2013.  [Id. ¶¶ 4–5].  The KKLC and KKLD, which were both published by KUI, were designed to be complementary.  [ECF No. 100 ¶ 38].  The parties disagree about the extent to which Plaintiff was permitted to use Defendants' material, other than the Licensed Data (the "Other Data"), in the KKLC.  Defendants assert that no "formal agreement exists" governing the use of the Other Data, [ECF No. 90 ¶ 11], but Plaintiff counters that Defendants did license him the use of some of the Other Data (readings and equivalents) and that the remainder of the Other Data (entry characters, stroke counts, and radical numbers) are in the public domain and therefore need not be licensed to be lawfully used, [ECF No. 100 ¶ 11].  In addition to permitting Plaintiff

---

[1] The Court draws the facts from Defendants' Local Rule 56.1 statement, [ECF No. 90], Plaintiff's response to that statement, [ECF No. 100], and the documents referenced therein.

[2] Plaintiff contends that much of the data contained in the KKLD cannot be intellectual property because it is in the public domain.  [ECF No. 100 ¶ 2].

to use some of Defendants' material, Halpern also wrote the foreword in the original version of the KKLC (the "Foreword"). [ECF No. 90 ¶ 7]. The parties dispute whether they reached an agreement concerning the perpetual use of the Foreword. While Defendants maintain that no agreement was ever discussed or reached, [id. ¶ 8], Plaintiff avers that his permission to use the Foreword was "not rescindable" (i.e., that he was entitled to include it in the KKLC forever) [ECF No. 100 ¶ 8].

In connection with the publication of the KKLC, Plaintiff and KUI entered into an agreement dated August 23, 2013 (the "KUI Agreement"), pursuant to which Plaintiff was required to obtain and provide proof of any permissions that he needed concerning the publication and/or licensing of the KKLC. [ECF No. 90 ¶ 6]. In 2015, a dispute arose between Plaintiff and Defendants regarding the purported incorporation of Defendants' data in the KKLC, and in June 2015 Halpern told KUI that the KKLC contained unlicensed data belonging to Defendants. [Id. ¶ 13].[3] Later in 2015, the parties attempted to settle their differences but were unsuccessful. [Id. ¶ 15; ECF No. 100 ¶ 15].

At some point in December 2017, Halpern sent Plaintiff a written communication that purported to revoke the authorization for use of the Foreword in the KKLC. [ECF No. 90 ¶ 16; ECF No. 100 ¶ 16].[4] In February 2018, Halpern sent Plaintiff another, similar written communication purporting to "confirm[] revocation." [ECF No. 90 ¶ 17; ECF No. 100 ¶ 17].[5]

---

[3] Plaintiff maintains that he did not use any data without permission and that Defendants' communications with KUI concerning the same were false and defamatory. [ECF No. 100 ¶ 13].

[4] The parties dispute what document, precisely, was sent to Plaintiff, and Plaintiff further contends that the notification that was sent is an inadmissible settlement communication protected by Federal Rule of Evidence 408. See [ECF No. 90 ¶ 16; ECF No. 100 ¶ 16].

[5] Plaintiff asserts that this communication is also protected by Federal Rule of Evidence 408. [ECF No. 100 ¶ 17].

Because of the parties' dispute concerning the use of Defendants' materials in the KKLC, KUI temporarily suspended distribution of the KKLC.  [ECF No. 90 ¶ 18].[6]  To resume distribution, but without conceding that use of the Foreword was unauthorized, Plaintiff suggested removing it from the KKLC.  [ECF No. 90 ¶ 21; ECF No. 100 ¶ 21].  Though the parties disagree about exactly when, KUI subsequently resumed publication of the KKLC (without the Foreword and with resulting changes to the title page, copyright page, table of contents, and cover).  [ECF No. 90 ¶¶ 22–23; ECF No. 100 ¶¶ 22–23].  That amended version of the KKLC is currently being sold.  [ECF No. 90 ¶ 24].

### B.    Procedural Background

In October 2018, Plaintiff sued Defendants in Massachusetts state court, bringing state law claims for defamation (Count I), tortious interference (Count II), unfair or deceptive trade practices under Massachusetts General Laws Chapter 93A (Count III), and a claim for recognition, confirmation, and enforcement of a foreign arbitral award (Count IV).  [ECF No. 1-2 at 31–35].  In November 2018, Defendants removed the action to this Court.  [ECF No. 1]. In June 2019, the Court denied Defendants' motion to dismiss for lack of personal jurisdiction. [ECF No. 24].  Defendants then answered, [ECF No. 28], and discovery began.[7]

Discovery has been protracted and excessively contentious.  Plaintiff filed, and the Court granted, multiple motions to compel.  See [ECF Nos. 52, 54, 70 (motions); ECF Nos. 63, 71, 72

---

[6] Plaintiff seems to dispute precisely what led to this decision but does not appear to dispute the general proposition that KUI suspended distribution of the KKLC because of his disagreement with Defendants.  See [ECF No. 100 ¶ 18].

[7] In February 2020, the Court granted Plaintiff's motion for judgment on the pleadings as to Count IV.  [ECF No. 44].

(Orders)].[8]  Additionally, although the initial scheduling order established a discovery cut-off date of February 25, 2020, [ECF No. 33], the Court granted multiple discovery deadline extension requests, [ECF Nos. 47, 50, 58, 76], and the discovery deadline was eventually pushed out all the way to October 9, 2020, [ECF No. 76].  As the Court has previously noted, [ECF No. 65; ECF No. 81 at 2], most of the blame for the discovery delays and protracted litigation rests squarely on Defendants.

On February 10, 2021, because the discovery window had closed, and because it had not heard from the parties in months, the Court requested a joint status report regarding the possibility of summary judgment motions.  [ECF No. 82].  Shortly thereafter, the parties made three separate filings, [ECF Nos. 83, 84, 85], the gist of which was that Defendants intended to move for summary judgment and Plaintiff believed additional discovery was necessary.  On February 19, 2021, in response to these filings, the Court issued an Order making clear that discovery was over, alerting the parties that it viewed successful summary judgment motions as highly unlikely, setting a trial date, and stating that it "expect[ed] no further filings from the parties beyond summary judgment motions, responses to those motions as contemplated by Local Rule 56.1, and the filings called for by the Court's pretrial order."  [ECF No. 86].

On March 1, 2021, Defendants filed their motion for summary judgment.  [ECF No. 88].  On March 5, 2021, Plaintiff filed a motion for sanctions, [ECF No. 91], which Defendants have moved to strike, [ECF No. 93].  The parties subsequently filed oppositions, [ECF No. 94 (opposition to motion to strike); ECF No. 95 (opposition to motion for sanctions); ECF No. 99 (opposition to motion for summary judgment)], and, with respect to the motions for summary

---

[8] In connection with these motions, the Court granted Plaintiff's request for attorneys' fees and costs, finding Defendants and Defendants' counsel jointly and severally liable for an award in excess of $15,000.  [ECF No. 81].

judgment and for sanctions, replies.  [ECF No. 103 (summary judgment reply); ECF No. 104 (sanctions reply)].[9]

## II.      LEGAL STANDARD

### A.      Sanctions

Under Federal Rule of Civil Procedure 37(b)(2),

> [i]f a party or a party's officer, director, or managing agent—or a witness designated under Rule 30(b)(6) or 31(a)(4)—fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders.  They may include the following:
>
> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims; . . .

Fed. R. Civ. P. 37(b)(2).  "The imposition of sanctions under Rule 37(b) is left to the discretion of the trial court."  Patel v. 7-Eleven, Inc., No. 17-cv-11414, 2020 WL 6940124, at *2 (D. Mass. June 24, 2020) (citing Ruiz v. Principal Fin. Grp., No. 12-cv-40069, 2014 WL 257429, at *4 (D. Mass. Jan. 22, 2014)).  The First Circuit has identified a "non-exhaustive list of factors" for district courts to consider when imposing sanctions, including "the severity of the discovery violations, legitimacy of the party's excuse for failing to comply, repetition of violations, deliberateness of the misconduct, mitigating excuses, prejudice to the other party and to the operations of the court, and adequacy of lesser sanctions."  AngioDynamics, Inc. v. Biolitec AG, 780 F.3d 429, 435 (1st Cir. 2015) (citing Vallejo v. Santini-Padilla, 607 F.3d 1, 8 (1st Cir. 2010)).

---

[9] On April 15, 2021, Plaintiff moved to strike certain aspects of Defendants' summary judgment reply brief.  [ECF No. 105].  Because the Court denies Defendants' motion for summary judgment, see infra, Section III.C, the motion is DENIED as moot.

### B.  Summary Judgment

Summary judgment is appropriate where the moving party can show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "[A]n issue is 'genuine' if it 'may reasonably be resolved in favor of either party.'"  Robinson v. Cook, 863 F. Supp. 2d 49, 60 (D. Mass. 2012) (alteration in original) (quoting Vineberg v. Bissonnette, 548 F.3d 50, 56 (1st Cir. 2008)).  "A fact is material if its resolution might affect the outcome of the case under the controlling law."  Cochran v. Quest Software, Inc., 328 F.3d 1, 6 (1st Cir. 2003).  Thus, "[a] genuine issue exists as to such a fact if there is evidence from which a reasonable trier could decide the fact either way."  Id.  By invoking summary judgment, "the moving party in effect declares that the evidence is insufficient to support the nonmoving party's case."  United States v. Plat 20, Lot 17, Great Harbor Neck, New Shoreham, R.I., 960 F.2d 200, 204 (1st Cir. 1992) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)).

"To succeed in showing that there is no genuine dispute of material fact, the moving party must . . . 'affirmatively produce evidence that negates an essential element of the non-moving party's claim,' or, using 'evidentiary materials already on file . . . demonstrate that the non-moving party will be unable to carry its burden of persuasion at trial.'"  Ocasio-Hernández v. Fortuño-Burset, 777 F.3d 1, 4–5 (1st Cir. 2015) (quoting Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000)).  Conversely, "[t]o defeat a properly supported motion for summary judgment, the nonmoving party must establish a trial-worthy issue by presenting enough competent evidence to enable a finding favorable to the nonmoving party."  ATC Realty, LLC v. Town of Kingston, N.H., 303 F.3d 91, 94 (1st Cir. 2002) (quoting LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 842 (1st Cir. 1993)).  That is, the nonmoving party

must set forth specific, material evidence showing that there is a genuine disagreement as to some material fact. Plat 20, Lot 17, Great Harbor Neck, 960 F.2d at 204 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986)).

In reviewing the record, the Court "must take the evidence in the light most flattering to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." Cochran, 328 F.3d at 6. The First Circuit has noted that this review "is favorable to the nonmoving party, but it does not give him a free pass to trial." Hannon v. Beard, 645 F.3d 45, 48 (1st Cir. 2011). "The factual conflicts upon which he relies must be both genuine and material[,]" Gomez v. Stop & Shop Supermarket Co., 670 F.3d 395, 397 (1st Cir. 2012), and the Court may discount "conclusory allegations, improbable inferences, and unsupported speculation." Cochran, 328 F.3d at 6 (quoting Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990)).

Pursuant to Federal Rule of Civil Procedure 56(d), if a party opposing summary judgment demonstrates

> by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the [C]ourt may:
>
> (1) defer considering the motion or deny it;
> (2) allow time to obtain affidavits or declarations or to take discovery; or
> (3) issue any other appropriate order.

Fed. R. Civ. P. 56(d).

## III.    DISCUSSION

### A.    Motion to Strike

Defendants argue that the Court should strike Plaintiff's motion for sanctions because it violates the Court's February 19, 2021 Order and is designed to sidestep Defendants' meritorious summary judgment motion, force Defendants to incur additional costs and fees, and give

Plaintiff leverage in a parallel copyright litigation currently pending in Japan.  [ECF No. 93 at 2].

Plaintiff responds that his motion does not run afoul of the Court's February 19, 2021 Order and

that he would have filed sooner if he had not been communicating with Defendants about

amicably resolving their discovery disputes.  [ECF No. 94 at 1–2].

      "Motions to strike are a generally disfavored remedy . . . and district courts have

considerable discretion in deciding such motions."  Legal Sea Foods, LLC v. Strathmore Ins.

Co., No. 20-cv-10850, 2021 WL 372453, at *1 (D. Mass. Feb. 3, 2021).  Defendants do not cite a

single case or rule (or any other authority) in support of their motion.  See [ECF No. 93].

Further, their principal argument, that Plaintiff's motion defies the Court's February 19, 2021

Order, fails.  In that Order, the Court stated that it expected responses to motions for summary

judgment "as contemplated by Local Rule 56.1."  [ECF No. 86].  Plaintiff's motion is, at least

arguably, contemplated by Local Rule 56.1 because such a motion is expressly contemplated by

Federal Rule of Civil Procedure 56(d), which provides litigants opposing summary judgment

with recourse if they cannot present facts essential to justify their opposition.  Fed. R. Civ. P.

56(d).  In any event, even if the motion were in contravention of the Court's prior Order, under

the circumstances here, the Court would not disregard it altogether solely on that basis.  In sum,

the Court will exercise its significant discretion, deny Defendants' motion to strike, and consider

Plaintiff's motion for sanctions on the merits.

B.    **Motion for Sanctions**

Plaintiff argues that Defendants have engaged in "egregious and willful obstruction during the discovery process,"[10] and, as a remedy, seeks (1) a number of adverse inferences,[11] (2) attorneys' fees and costs, and (3) the imposition of a $30,000 fine.  [ECF No. 92 at 1–2]. Defendants maintain that they have met their discovery obligations and that sanctions are therefore inappropriate.  [ECF No. 95].  Plaintiff identifies six instances of purported discovery misconduct.

First, Plaintiff asserts that Defendants have failed to produce emails, from 2007 and 2008, between Halpern and Michael Staley of KIL concerning the extent to which Plaintiff was authorized to use Defendants' data in the KKLC.  [ECF No. 92 at 8–10].  Although Plaintiff has plausibly suggested that these emails exist, [id. at 9–10], Halpern has submitted a sworn declaration stating, albeit quite generally, that Defendants have not intentionally withheld any relevant documents and have complied with their discovery obligations, [ECF No. 95-1 ¶¶ 3, 7,

---

[10] Plaintiff argues that Defendants' discovery misconduct fits into a pattern of "disregard for legal obligations and proper judicial process," citing, among other things, Defendants' conduct in connection with the parties' arbitration in Japan.  [ECF No. 92 at 4–6].  How Defendants conducted themselves in Japan is of little relevance to the Court, and the Court will not sanction Defendants in this litigation on the basis of alleged misconduct in a different forum. Additionally, Plaintiff asserts that Defendants' motion to dismiss and oppositions to Plaintiff's motions for trustee process and for judgment on the pleadings were filed in bad faith.  [Id. at 6–7].  The purpose of Rule 37 sanctions is not to punish litigants for conduct unrelated to discovery, and, more importantly, the Court does not view Defendants' positions or filings in connection with those motions as sanctionable.

[11] Specifically, Plaintiff seeks an order establishing that the documents and information that Defendants impermissibly withheld during discovery would have shown that Defendants: (1) authorized the use of all CJKI material in the KKLC; (2) falsely told KUI and officers of KIL that certain content in the KKLC violated Defendants' copyrights; (3) defamed Plaintiff and pressured KUI to stop publishing his book in an effort to force him to forgo the remainder of the arbitral award; (4) falsely told Plaintiff that they were insolvent; and (5) are alter-egos and should be held jointly and severally liable.  [ECF No. 92 at 1–2].

9, 10], and Defendants' counsel has represented the same in Defendants' brief, [ECF No. 95 at 7 ("Defendants have produced all responsive, non-privileged documents in their possession, custody, or control.")].  Despite the fact that Defendants' productions and discovery responses have been deficient in the past, in light of these sworn statements and representations, the Court is not prepared, on the record before it, to order an adverse inference based solely on Plaintiff's speculative conclusions regarding the content of emails that may or may not exist.

Second, Plaintiff argues that Defendants have failed to produce a 2015 email in which Halpern purportedly defamed Plaintiff.  [ECF No. 92 at 10–11].  Once again, Plaintiff points to compelling evidence suggesting that this email exists.  [Id. at 11 (noting email from Staley to another KIL individual seemingly copying part of the 2015 email from Halpern); ECF No. 92-3 at 19 (email)].  Still, as discussed above, where Defendants and their counsel have represented that they are not withholding any responsive documents, the Court is again unwilling to assume that the email exists, that it is in Defendants' possession, custody, or control, or that it says what Plaintiff says it says.

Third, Plaintiff maintains that Defendants have withheld other emails between Defendants and KUI concerning Plaintiff and the KKLC.  [ECF No. 92 at 11–12].  As support, Plaintiffs point to twelve emails between Defendants and KUI, sent in 2018, 2019, and 2020, that Defendants did not produce until their fourth production, after Halpern was confronted with them at his deposition.[12]  [Id. at 12].  In essence, Plaintiff contends that Defendants did not produce these documents until they knew Plaintiff had already acquired them from another source, and it is therefore reasonable to infer that Defendants may be withholding similar documents which Plaintiff has been unable to obtain from another source.  [Id.].  Defendants respond that no such

---

[12] Plaintiff obtained them from KUI.  [ECF No. 92 at 12].

documents exist, and that Plaintiff has not been prejudiced by their late production because, by his own admission, he had received the twelve emails from KUI earlier. [ECF No. 95 at 9–10]. Once again, based on the sworn statements and representations of Defendants and their counsel, at this time, the Court declines to assume the existence and content of documents.

Fourth, Plaintiff avers that Defendants' interrogatory responses were incomplete because Defendants failed to identify all relevant communications with KUI. [ECF No. 92 at 13]. Specifically, Plaintiff points to one phone call and at least two in-person meetings that took place but were not disclosed by Defendants. [Id.]. As Defendants note, [ECF No. 95 at 10], Plaintiff is clearly aware of these meetings and call. Accordingly, at trial, he may question Halpern about them and/or seek to undermine his credibility if he cannot recall them. The Court will not, however, assume that what happened during these meetings and the call was inculpatory merely because Defendants failed to list them in their interrogatory responses.

Fifth, Plaintiff asserts that Halpern failed to answer questions related to his and CJKI's finances during his Rule 30(b)(6) deposition. [ECF No. 92 at 14]. Defendants maintain that Halpern answered questions candidly and to the best of his ability during the deposition, and that it is permissible to answer questions with "I don't know" or "I don't recall." [ECF No. 95 at 10–11]. Defendants further represent that, after his deposition, Halpern provided supplemental information to Plaintiff regarding his and CJKI's finances. [Id.]. Although witnesses testifying in their personal capacity may appropriately answer questions by citing a lack of knowledge or recollection, witnesses testifying as Rule 30(b)(6) corporate designees have different obligations. Importantly, "[c]orporations have a duty to make a good faith effort to designate knowledgeable persons for Rule 30(b)(6) depositions," Booker v. Mass. Dep't of Pub. Health, 246 F.R.D. 387, 389 (D. Mass. 2007), and "if the persons designated by the corporation do not possess personal

knowledge of the matters set out in the deposition notice, the corporation is obligated to prepare the designees so that they may give knowledgeable and binding answers for the corporation," id. (quoting Marker v. Union Fidelity Life Ins. Co., 125 F.R.D. 121, 126 (M.D.N.C. 1989)); see SiOnyx, LLC v. Hamamatsu Photonics K.K., No. 15-cv-13488, 2017 WL 8236153, at *2 (D. Mass. Oct. 13, 2017) ("The duty to prepare a Rule 30(b)(6) designee goes beyond matters personally known to that designee or to matters in which the designee was personally involved. If necessary, the deponent must use documents, past employees, and other resources in performing the required preparation.  Although adequately preparing a Rule 30(b)(6) deposition can be burdensome, this is merely the result of the concomitant obligation from the privilege of being able to use the corporate form in order to conduct business." (internal citations and quotation marks omitted)).  CJKI was obligated to adequately prepare Halpern to answer questions, including about finances, on its behalf, and for that reason, Halpern's purported "poor memory for numbers," [ECF No. 92-4 at 11], is no excuse for his failure to answer questions at his deposition.

Although the Court is not, at this time, prepared to require the inferences that Plaintiff requests, it will, in light of Defendants suspect performance with regard to discovery, allow Plaintiff, to the extent that he believes he lacks clear answers to the specific questions asked at the deposition that concern finances, to serve Defendants with additional interrogatories re-asking those questions no more than five (5) days after the entry of this Order.  Should Plaintiff serve such interrogatories, Defendants must respond promptly, candidly, and completely no more than seven (7) days after they are served.[13]

---

[13] In his reply, Plaintiff identifies a number of allegedly false statements that Halpern made during his deposition.  [ECF No. 104 at 8–10].  At this time, the Court sees no need to delve into

Lastly, Plaintiff takes issue with how Defendants have produced documents.  [ECF No. 92 at 14–15].  Specifically, Plaintiff asserts that Defendants failed to meet their deadlines, did not indicate which request for production each document was produced in response to, and "bur[ied] a few pages of responsive documents in approximately 2,100 pages of production that were largely duplicative or irrelevant and hundreds of pages of documents in an unreadable format." [Id.].  As to Plaintiff's first asserted issue, even if Defendants missed their deadline, it was only by four days, [ECF No. 92 at 14], and Plaintiff has identified no resulting prejudice from this minimal delay.  As to Plaintiff's second asserted issue, Plaintiff does not cite any authority for the proposition that a producing party must tie each produced document to a specific discovery request (and the Court is aware of no such duty).  In any event, given that neither party has produced documents in this manner, the Court will not sanction Defendants, alone, for failing to do so.  Cf. Serra v. Quantum Servicing, Corp., 747 F.3d 37, 40 n.2 (1st Cir. 2014) (noting that "counsel in glass houses ought not throw stones").  As to Plaintiff's third asserted issue, Plaintiff cannot simultaneously fault Defendants for withholding documents and for producing too many, and he should and could have asked for any unreadable documents to be re-produced in a readable format.

As made clear by the Court's previous Orders, Defendants have been playing fast and loose with their discovery obligations throughout this case.  Still, based on the filings in connection with Plaintiff's motion for sanctions, it appears as though many of their discovery deficiencies have been remedied.  The Court is unable to conclude at this juncture that discoverable material is being impermissibly withheld.  That said, Defendants have been and

---

the specifics of each statement, and therefore takes no position on whether the evidence Plaintiff relies on actually demonstrates that Halpern lied during his deposition.  Plaintiff may seek to undermine Halpern's credibility at trial by confronting him with this evidence.

continue to be obligated to produce all "reasonably obtainable information within the[ir] possession, custody or control." Tyler v. Suffolk Cnty., 256 F.R.D. 34, 37 (D. Mass. 2009) (citing Rosie D. v. Romney, 256 F. Supp. 2d 115, 119 (D. Mass. 2003)).  Accordingly, if Defendants possess or have access to documents that should have been produced but have been withheld, they must produce them immediately.  Further, Halpern (both in his individual capacity and as a representative for CJKI) and Defendants' counsel are each directed to submit a sworn declaration or affidavit, no more than seven (7) days after the entry of this Order, attesting to the fact that they have diligently searched for the specific documents (or categories of documents) that are the subject of Plaintiff's motion and have produced all responsive documents in their possession, custody, or control.  Failure to do so is likely to result in the sanctions that Plaintiff seeks as well as curative instructions to the jury if warranted.

### C.      Motion for Summary Judgment

Defendants move for summary judgment on each of Plaintiff's three remaining claims. [ECF No. 88].  The motion is DENIED.  As is evident from the briefing and should have been obvious to counsel for Defendants, the issues raised in the motion are highly fact-bound and thus not appropriate for summary judgment.

#### 1.      Count I: Defamation

> To establish a defamation claim under Massachusetts law, a plaintiff must allege four elements: "1) that the defendant made a statement, concerning the plaintiff, to a third party; 2) that the statement was defamatory such that it could damage the plaintiff's reputation in the community; 3) that the defendant was at fault in making the statement; and 4) that the statement either caused the plaintiff economic loss . . . or is actionable without proof of economic loss."

Alharbi v. Beck, 62 F. Supp. 3d 202, 205–06 (D. Mass. 2014) (quoting Shay v. Walters, 702 F.3d 76, 81 (1st Cir. 2012)).  "Four types of statements are actionable without proof of economic loss: statements that constitute libel; statements that charge the plaintiff with a crime; statements

that allege that the plaintiff has certain diseases; and statements that may prejudice the plaintiff's profession or business." Ravnikar v. Bogojavlensky, 782 N.E.2d 508, 511 (Mass. 2003) (citations and internal quotation marks omitted).  Defendants argue that Plaintiff's defamation claim fails because he has not adduced sufficient evidence of a false statement or causation, and because Defendants are protected by the common interest privilege.  [ECF No. 89 at 8–9]. Plaintiff responds that there are triable questions of fact on each element, and that the common interest privilege is inapplicable here.  [ECF No. 99 at 5–15].

With respect to a false statement, Defendants argue that Plaintiff cannot identify a false statement because the parties "had no formal agreement governing the [Other Data]" and therefore "any statement[s] by Defendants of or concerning the [Other Data] are factually true or were opinion based on disclosed or assumed non-defamatory facts."  [ECF No. 89 at 9].[14]  First, whether these statements were true cannot be resolved without a trial.  The parties dispute whether authorization was (1) given and (2) necessary.  Plaintiff has marshaled evidence on both points sufficient to create a triable issue of fact.  See, e.g. [ECF No. 99-1 at 9 (Halpern conceding that entry characters cannot be copyrighted); id. at 7 (Halpern admitting that stroke count is not susceptible of copyright); id. at 5 (Halpern acknowledging that radicals are public); ECF No. 99-3 at 50 (email from Staley to Plaintiff suggesting that Halpern provided authorization for additional data); ECF No. 99-1 at 6 (Halpern admitting that he and Plaintiff had reached informal agreements in the past regarding use of data); ECF No. 99-5 ¶¶ 7–16 (Plaintiff's sworn statement that certain components of the Other Data was in the public domain and that he had permission regarding the remainder)].

---

[14] The Court notes that Defendants assert, multiple times, that the parties had no "formal agreement," [ECF No. 89 at 9], which begs the question regarding the existence of an informal agreement.

Further, some of the allegedly defamatory statements go beyond merely asserting that Plaintiff was using unauthorized data or that a formal agreement governing the use of such data did not exist.  See [ECF No. 99-2 at 16 ("[Plaintiff] sends me daily threats, is very aggressive"); id. at 17 (describing the unrelated arbitration, noting that Plaintiff breached his contract and "continues to be in illegal possession of our copyrighted data for that case," and stating that "[t]his indicates a clear pattern of behavior: [Plaintiff] uses copyrighted data without permission and without compunction"); id. at 21 ("He will do *anything,* including sounding extremely polite and reasonable, to defend his position so that he can get away with using our data in violation of copyright."); ECF No. 99-4 at 4 ("[Plaintiff]'s arrogance, threats and unwillingness to cooperate lead to a dead end . . . Everyday that goes by, [Plaintiff] continues to illegally enjoy royalties"); id. at 7 ("He is being very aggressive and demanding and is in violation of about ten clauses of our contract.  He is also using our copyrighted data without permission and refuses to delete it.  I am trying to salvage the situation with a mediation but he is being belligerent.")].  Accordingly, even if Defendants are correct that Plaintiff did not have formal authorization, those statements may still be actionable.  In short, Plaintiff has adduced enough evidence regarding an allegedly defamatory statement to withstand Defendants' summary judgment motion.

With respect to causation, Defendants argue that KUI's decision to suspend distribution of the KKLC because Plaintiff was unable to submit written proof of authorization to use the Foreword caused Plaintiff's damages rather than any allegedly defamatory statement.  [ECF No. 89 at 8].  In support they cite an email from KUI to Plaintiff, with the following language:

> Thank you for your recent lengthy and detailed explanation of the situation between you and Jack Halpern.  Also, thanks for confirming that you received Halpern's notice of Dec. 22, 2017 revoking permission for his Foreword to appear in The

KKLC.  Unfortunately, this means that KUI is publishing a work that includes unauthorized material; and as you can imagine, it puts us in an untenable position.

Therefore, I'm writing to inform you that we're going to have to temporarily halt distribution of the book until we're informed that the matter has been resolved.

We're very sorry that it has gotten to this point - we do want to continue to sell your book, and we're hopeful that once the two of you reach a settlement, we can resume shipping.

[ECF No. 89-9 at 2].  First, even if Defendants are correct that the immediate cause of Plaintiff's damages was KUI's decision, Plaintiff has pointed to evidence suggesting that KUI made that decision at Halpern's behest.[15]  See, e.g., [ECF No. 99-2 at 22 (email from Halpern to KUI noting that "Authorization for [Plaintiff] to use [Halpern]'s foreword expired on Dec. 31, 2017"); ECF No. 92-3 at 2 (email from Halpern to KUI proposing that KUI "tell [Plaintiff] 'remove the data, get permission, or show proof'"); id. at 6 (email from Halpern to KUI explaining that "[a]s a publisher, [KUI] ha[s] the right to demand proof that he owns the copyright to the data he submits for publication"); id. at 7 (email from Halpern asking KUI to "literally stop the press and put reprinting on hold" "until [he and Plaintiff] clear up the legality of [Plaintiff] using [Defendants'] data in the [KKLC]"); id. at 17 (email from Halpern to KUI in which Halpern told KUI that Plaintiff was violating his publishing agreement with KUI and encouraged them to "take action as soon as humanly possible")].

Second, why KUI suspended publication of the KKLC is a disputed issue of material fact that must be resolved by a factfinder where the parties disagree as to whether KUI's decision actually concerned the allegedly unauthorized use of the Other Data in the KLLC or the Foreword.  See, e.g., [ECF No. 99-2 at 26–28 (table compiled by Halpern and sent to KUI listing

---

[15] The Court also notes that the parties dispute whether Halpern was legally entitled to revoke permission for the Foreword.  See [ECF No. 99-5 ¶ 26 (Plaintiff's sworn statement regarding use of the Foreword); ECF No. 99-4 at 2 (internal KIL email regarding the cross-promotional effects of the KKLC and the KKLD)].

Plaintiff's alleged unauthorized use of data without mentioning Foreword); ECF No. 99-4 at 3 (Halpern noting that "the Foreword is only a small fraction of the unauthorized data used in KKLC")]. Notably, although Halpern purportedly revoked authorization regarding the Foreword in either December 2017 or February 2018, see [ECF No. 90 ¶¶ 16–17; ECF No. 100 ¶¶ 16–17], KUI did not suspend publication until July 2018, see [ECF. No. 89-9 at 2], after Halpern sent additional emails regarding Plaintiff's purported unauthorized use of Defendants' copyrighted material, see [ECF No. 99-2 at 31–32].

Third, any failure by Plaintiff to demonstrate causation would not necessarily be fatal to his defamation claim because of the nature of the allegedly defamatory statements. A plaintiff need not demonstrate proof that the statement caused economic loss if the statement "may prejudice the plaintiff's profession or business." Ravnikar, 782 N.E.2d at 511. Here, the allegedly defamatory statements (i.e., essentially, that Plaintiff was a plagiarist) directly impact his professional reputation as a scholar and lexicographer. "A statement falls within this exception to the economic harm requirement if it alleges that the plaintiff lacks a necessary characteristic of the profession," id., and academic integrity is a necessary characteristic of Plaintiff's profession. Thus, to prevail, Plaintiff need not actually show that Defendants' statement caused to economic loss. See id. (explaining that plaintiffs bringing claims based on such statements can "recover noneconomic losses, including emotional injury and damage to reputation" and that "undamaged plaintiff[s] may recover nominal damages").

With respect to the common interest privilege, Defendants argue that KUI, Plaintiff, and Defendants have a common interest in the KKLC because KUI publishes it, Plaintiff wrote it, and certain aspects of Defendants' book, the KKLD, were incorporated into it. [ECF No. 89 at 9]. For that reason, Defendants maintain, they cannot be held liable for their allegedly

defamatory statements.  [Id.].  Plaintiff responds that the parties' interests were not, in fact, aligned, and, even if they were, Defendants are not immune from liability because they abused the privilege by making the false statements recklessly or maliciously.  [ECF No. 99 at 13–15].

> Massachusetts recognizes a conditional common law privilege for otherwise defamatory statements where the publisher and the recipient have a common interest, and the communication is of a kind reasonably calculated to protect or further it.  One variant of this conditional privilege arises when the challenged publication is reasonably necessary to the protection or furtherance of a legitimate business interest. . . . The burden of establishing the existence and applicability of a conditional privilege rests with [Defendants]. . . .

Zeigler v. Rater, 939 F.3d 385, 392–93 (1st Cir. 2019) (citations and internal quotation marks omitted).  "The existence of a conditional privilege, in and of itself, does not fully insulate defamatory speech from tort liability [because] conditional privilege may be lost if that privilege is abused."  Id. at 393.  "Massachusetts law recognizes two ways in which a defendant may relinquish the protection of a conditional privilege: by publishing statements recklessly or by publishing statements with actual malice."  Id. at 393–94.  "In this context, actual malice occurs when 'defamatory words, although spoken on a privileged occasion, were not spoken pursuant to the right and duty which created the privilege but were spoken out of some base ulterior motive.'"  Id. at 396 (quoting Dexter's Hearthside Rest., Inc. v. Whitehall Co., 508 N.E.2d 113, 117 (Mass. 1987)).  Plaintiff carries "the burden of establishing abuse."  Id. at 393.

As an initial matter, the Court is skeptical of the notion that Defendants' attenuated interest in the KKLC (i.e., that some of their data is incorporated into the book) gives them free reign to make defamatory statements regarding Plaintiff.  They have not shown that they had any direct financial stake in the KKLC, and, in fact, it seems as though Defendants would have benefitted financially from the success of the KKLC (not the suspension of its publication) given that the KKLC was marketed as a companion to the KKLD.  See [ECF No. 100 ¶ 38].  Further, as discussed above, some of Defendants' allegedly defamatory statements, such as those about

Plaintiff's conduct in the parties' Japanese arbitration, did not concern the KKLC at all and therefore could not have been reasonably calculated to "protect" or "further" the common interest in the KKLC (if such an interest existed). See Zeigler, 939 F.3d at 392–93. In any event, setting aside whether the conditional common interest privilege is applicable, whether Defendants made the allegedly defamatory statements with actual malice, which would constitute an abuse of the privilege, is a factual dispute that must be resolved by a factfinder. Specifically, there is evidence in the record from which a reasonable jury could conclude that Halpern's allegedly defamatory statements were "spoken out of some base ulterior motive." Dexter's Hearthside Rest., 508 N.E.2d at 117. Namely, to exert pressure on Plaintiff to accept partial satisfaction of his arbitral award or to agree to a licensing agreement favorable to Defendants. See, e.g., [ECF No. 92-1 at 7 (email from Halpern to Plaintiff concerning the satisfaction of the arbitral award in which Halpern discussed the possibility of asking KUI to remove the KKLC from the market); id. at 14 (Halpern writing that if Plaintiff continued to arbitrate, he would wage "an all-out war that w[ould] bring [Plaintiff] financial ruin, despair, and no future"); ECF No. 92-3 at 6 (email from Halpern to KUI in which Halpern bemoaned the fact that he had little leverage over Plaintiff, suggested that KUI had significant leverage, and predicted that if KUI used its leverage, Plaintiff would be forced to "sign a licensing agreement with [Defendants]"); id. at 14 (email from Halpern telling KUI that KUI had put Defendants "in a position of strength in negotiating with [Plaintiff]" by ceasing publication of the book until the Foreword issue was resolved)].

In sum, because Defendants have not shown that they are entitled to judgment as a matter of law on Plaintiff's defamation claim, their motion for summary judgment as to Count I, [ECF No. 88], is DENIED.

### 2.    Count II: Tortious Interference

Under Massachusetts law, the elements of this tort are: (1) a business relationship or contemplated contract of economic benefit; (2) the defendant's knowledge of such relationship; (3) the defendant's interference with it through improper motive or improper means; and (4) the plaintiff's loss of advantage directly resulting from the defendant's conduct.

Ary Jewelers, LLC v. IBJTC Bus. Credit Corp., 414 F. Supp. 2d 90, 93 (D. Mass. 2006).

Defendants argue that because Plaintiff's defamation claim is deficient, his tortious interference claim must also fail because it is "purely derivative of his defamation claim and based on the same alleged conduct." [ECF No. 89 at 9].  Additionally, they seem to assert, in a conclusory manner, that they are entitled to judgment as a matter of law because Plaintiff cannot demonstrate an essential element, namely causation.  [Id.].

As to Defendants' first argument, the Court has already concluded that Plaintiff's defamation claim cannot be resolved by summary judgment.  More importantly, as Plaintiff points out, his defamation claim is not based on identical alleged misconduct.  [ECF No. 99 at 16–17].  As to Defendants' second argument, for reasons similar to those discussed above, there is evidence in the record from which a reasonable jury could find that Defendants' tortious interference caused Plaintiff's harm.  Specifically, a reasonable jury could determine that by encouraging KUI to stop publishing the KKLC, Defendants caused Plaintiff to lose money in the form of forgone book sales, revenue from other products, and opportunities with KUI and other publishers.  See supra, Section III.C.1; [ECF No. 100 ¶¶ 26–28].  Thus, Defendants' motion for summary judgment as to Count II, [ECF No. 88], is DENIED.

### 3.    Count III: Chapter 93A

Defendants argue that Plaintiff's Chapter 93A claim is derivative of his defamation claim, that they are entitled to judgment as a matter of law as to causation, and that Plaintiff is

not entitled to relief under Chapter 93A because the alleged misconduct did not take place in

Massachusetts.  [ECF No. 89 at 9–10].

With respect to Defendants' first argument, Plaintiff's claim is not necessarily derivative

of his other claims—he could, for instance, potentially recover based on Defendants' failure to

timely pay the full arbitral award, see Pepsi-Cola Metro. Bottling Co. v. Checkers, Inc., 754 F.2d

10, 18 (1st Cir. 1985) (holding that withholding payment due under a contract to enhance

bargaining power could constitute a Chapter 93A violation)—and even if it were, that fact is not

fatal at the summary judgment stage where the Court has already determined that the underlying

claims survive summary judgment, see G.S. Enters., Inc. v. Falmouth Marine, Inc., 571 N.E.2d

1363, 1372 (Mass. 1991) (finding that where tortious interference claim could withstand

summary judgment, Chapter 93A claim premised on that interference could also proceed to

trial).  With respect to Defendants' second argument, as discussed above, there is evidence in the

record creating a triable factual dispute as to causation.

As to Defendants' third argument, Chapter 93A § 11, the subsection on which Plaintiff

seems to rely, provides that

> No action shall be brought or maintained under this section unless the actions and
> transactions constituting the alleged unfair method of competition or the unfair or
> deceptive act or practice occurred primarily and substantially within the
> commonwealth.  For the purposes of this paragraph, the burden of proof shall be
> upon the person claiming that such transactions and actions did not occur primarily
> and substantially within the commonwealth.

Mass. Gen. Laws ch. 93A, § 11.  As a preliminary matter, it is Defendants' burden to

demonstrate that the transactions and actions "did not occur primarily and substantially" in

Massachusetts, and they have failed to identify any record evidence on that issue.  See [ECF No.

89 at 10 (asserting, without citing any evidence, that the alleged misconduct "occurred outside of

this Commonwealth—specifically, in and from Japan"); ECF No. 103 at 4–5 (stating, without

23

citation, that "[n]one of the actions or transactions occurred in Massachusetts"); ECF No. 90 ¶ 25 (averring, in their Local Rule 56.1 statement, that "[n]one of the alleged acts underlying Plaintiff's [sic] occurred primarily and substantially within Massachusetts" without any citation to the record)].  The Court could deny Defendants' motion on this basis alone.  In any event, even assuming Defendants are correct that at all times relevant, Halpern and KUI's personnel were located in Japan, that does not foreclose relief for Plaintiff under § 11, at least at this stage. Notably, in the case that Defendants rely upon, Kuwaiti Danish Computer Co. v. Digital Equipment Corp., the § 11 issue was decided after trial, on a full factual record, not on summary judgment.  781 N.E.2d 787, 797 (Mass. 2003) (noting that deference was due to the trial court's "findings of fact on this issue").  In fact, in Kuwaiti Danish, the Massachusetts Supreme Judicial Court specifically suggested that courts "should, after making findings of fact, and after considering those findings in the context of the entire § 11 claim, determine whether the center of gravity of the circumstances that give rise to the claim is primarily and substantially within the Commonwealth."  Id. at 799.  Here, the Court has not yet made findings of fact, and summary judgment is therefore inappropriate.

Thus, Defendants' motion for summary judgment as to Count III, [ECF No. 88], is DENIED.[16]

---

[16] Defendants also seem to argue that, with respect to all three remaining counts, Plaintiff is "not entitled to any economic damages in his individual capacity" because Plaintiff formed a company, Lexica, to receive KKLC-related revenue on his behalf.  [ECF No. 89 at 9–10].  They do not, however, cite any cases in support of this argument or otherwise elaborate.  For this reason, the Court finds that they have failed to demonstrate that they are entitled to judgment as a matter of law.  See supra, Section II.B (showing that the burden is on the moving party).

**IV.      CONCLUSION**

Accordingly, for the reasons stated above, Defendants' motion for summary judgment, [ECF No. 88], Plaintiff's motion for sanctions, [ECF No. 91], and Defendants' motion to strike, [ECF No. 93], are <u>DENIED</u>.  Additionally, Plaintiff's motion to strike, [ECF No. 105], is <u>DENIED</u> as moot.

To the extent Plaintiff believes he still lacks answers to the specific questions concerning finances that he asked Halpern at his deposition, he may serve Defendants with additional interrogatories, re-asking those questions, no more than five (5) days after the entry of this Order, which Defendants must respond to promptly, candidly, and completely no more than seven (7) days after they are served.

Additionally, no more than seven (7) days after the entry of this Order, Halpern (both in his individual capacity and as a representative for CJKI) and Defendants' counsel shall each submit a sworn declaration or affidavit attesting to the fact that they have diligently searched for the documents (or categories of documents) described above and have produced all responsive documents in their possession, custody, or control.  Failure to do so is likely to result in the sanctions that Plaintiff seeks and curative jury instructions if warranted.

**SO ORDERED.**

April 22, 2021                                                    /s/ Allison D. Burroughs
                                                                           ALLISON D. BURROUGHS
                                                                           U.S. DISTRICT JUDGE